**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**PCPA, LLC, et al.**</u>

    v.                      Civil No. 16-cv-112-PB
                                    Opinion No. 2016 DNH 119

<u>**The Flying Butcher, LLC, et al.**</u>

<u>**MEMORANDUM AND ORDER**</u>

In March 2016, PCPA, LLC and Prime Choice Brands, LLC sued The Flying Butcher, LLC and Allan Bald in this court. The plaintiffs and the defendants here are also parties to arbitration proceedings in which, plaintiffs claim, the arbitrator improperly decided that the parties' dispute was not "arbitrable." Plaintiffs therefore brought this action, seeking declaratory relief, and to stay the arbitration proceedings until the court, rather than the arbitrator, can decide whether their claims are arbitrable.

Plaintiffs have since moved to dismiss their complaint without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). The defendants oppose plaintiffs' motion, arguing that a dismissal without prejudice will injure them. Having considered both sides' arguments, I grant plaintiffs' motion.

I.   **BACKGROUND**

According to plaintiffs' complaint, defendants Flying Butcher and Allan Bald are former franchisees of Meat House Franchising ("MHF"), the franchisor of The Meat House chain of specialty butcher and grocery shops.  In 2012, one or both of the defendants entered into a "Franchise Agreement" to operate a The Meat House store in Amherst, New Hampshire, and also an "Area Development Agreement," agreeing to develop and run six The Meat House franchises in a designated area.  Doc. No. 1 at 3.  The Franchise Agreement included an arbitration clause, requiring the parties to the agreement to resolve disputes "arising out of or relating to [the] operation of the Franchised Business or this Agreement" by "arbitration [with] the American Arbitration Association in New Hampshire."  Doc. No. 1-1 at 35.

In April 2014, MHF's secured creditors entered into an Asset Purchase Agreement with PCPA, one of the plaintiffs in this case.  Doc. No. 1 at 3.  As a result of that Asset Purchase Agreement, PCPA claims that it acquired the right to enforce MHF's Franchise Agreements and Area Development Agreements, including the agreements with the defendants here.   Id.

Soon thereafter, the parties to this lawsuit had a falling out.  According to the plaintiffs, the defendants improperly terminated the Franchise Agreement, and then failed to comply

2

with that agreement's post-termination non-competition provisions.  Id. at 4.  Plaintiffs further claim that the defendants violated plaintiffs' Lanham Act rights by continuing to use The Meat House's mark without legal authority.  Id.  The defendants dispute these allegations.  Doc. No. 9 at 2.

On March 16, 2015, plaintiffs filed a statement of claim with the American Arbitration Association ("AAA") against both Flying Butcher and Bald, asserting claims for breach of contract, trademark infringement, unfair competition and false designation of origin.  Doc. No. 1 at 4-5.  Plaintiffs asserted that it was appropriate to arbitrate this dispute, because they had validly acquired the right to enforce the Franchise Agreement, including the agreement's mandatory arbitration provision, against the defendants.[1]  Id.

Approximately ten months later, in January 2016, defendants filed a "Motion for Pre-Hearing Dispositive Ruling that

---

[1] Bald objected to arbitrating plaintiffs' claims, and filed an action in state court seeking a declaration that he, in his individual capacity, was not contractually bound by the arbitration provision.  That action was removed to this court, and Bald subsequently moved for summary judgment.  By order dated April 19, 2016, Judge McAuliffe granted Bald's motion, concluding that "Bald is entitled to judgment as a matter of law given the undisputed facts, as it is clear that he is neither a party to, nor personally bound by, the terms of the Franchise Agreement."  Bald v. PCPA, LLC, 2016 DNH 081, 13.  That matter, 15-cv-219-SM, is now closed.

Claimants Lack Standing" with the arbitrator.  Id. at 5.  In
their motion, defendants argued that the Franchise Agreement was
not validly transferred to the plaintiffs, that plaintiffs
therefore had no right to enforce the agreement's mandatory
arbitration clause, and that the arbitrator thus lacked
jurisdiction.  Id.  The arbitrator apparently agreed.  In a
March 15, 2016 Interim Order, the arbitrator found that the
Franchise Agreement had not been lawfully transferred to the
plaintiffs, and, therefore, that the plaintiffs "have no claim
to arbitration."  See Doc. Nos. 1 at 7-8; 13 at 1.

    Ten days later, on March 25, plaintiffs commenced this
action.  Doc. No. 1.  Plaintiffs assert that, "[i]n entering the
Interim Order the Arbitrator made determinations regarding the
'arbitrability' of the disputes between the parties that
exceeded the Arbitrator's mandate and which Plaintiffs contend
are issues that are solely within the province of the Court."
Doc. No. 13 at 1-2.  Plaintiffs therefore sought a declaration
from the court that the Franchise Agreement was validly
transferred to plaintiffs, and that plaintiffs could enforce the
terms of the Franchise Agreement, including the arbitration
provision.  Doc. No. 1 at 8.  Plaintiffs also sought an order
staying the arbitration proceedings until the court decided
whether the dispute should be resolved by arbitration.  Id. at

9.

Contemporaneous with filing their complaint, plaintiffs submitted a motion to the arbitrator.  Doc. No. 13 at 2.  In their motion, plaintiffs advised the arbitrator of their complaint, and argued that (1) the arbitrability questions should be decided by a court, not the arbitrator, (2) the arbitrator's Interim Order divested her of jurisdiction to take further action in the arbitration, and (3) the arbitrator should therefore take no further action until the court could decide whether the dispute was arbitrable.  Id.

Undeterred, the arbitrator issued another order on April 15, 2016, stating that she had the authority to decide whether the plaintiffs' claims were arbitrable, but giving plaintiffs more time to file supplemental briefs.  Id. at 2-3.  Pursuant to that invitation, plaintiffs submitted additional materials to the arbitrator on April 22.  Id. at 3.  On May 23, however, the arbitrator issued an order in which she again rejected the plaintiffs' arguments, and then closed the case.  Id.

That same day, plaintiffs' attorney contacted defense counsel to explain that plaintiffs planned to dismiss their complaint in this case without prejudice.  Id.  Defendants nonetheless filed their answer later that afternoon.  Doc. No. 9.  Then, two days later, defendants submitted a motion for

summary judgment.  Doc. No. 11.  Plaintiffs moved to dismiss
their complaint without prejudice on June 2.  Doc. No. 13.  On
June 20, defendants requested leave to amend their answer to add
counterclaims.  Doc. No. 19.

## II.  <u>ANALYSIS</u>

Plaintiffs have moved, pursuant to Federal Rule of Civil
Procedure 41(a)(2), to dismiss their suit without prejudice.  In
cases, like this one, where (1) the defendants have filed either
their answer or a motion for summary judgment, and (2) not all
parties stipulate to the dismissal, Rule 41(a)(2) provides that
"an action may be dismissed at the plaintiff's request only by
court order, on terms that the court considers proper."  "Unless
the order states otherwise, a dismissal under [Rule 41(a)(2)] is
without prejudice."  Fed. R. Civ. P. 41(a)(2).

Rule 41(a)(2) allows plaintiffs to dismiss an action
voluntarily, "as long as no other party will be prejudiced."
Doe v. Urohealth Sys., Inc., 216 F.3d 157, 160 (1st Cir. 2000)
(quoting Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d
46, 50 (1st Cir. 1981) (internal quotation marks omitted)); see
Grover by Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir.
1994) ("The primary purpose of the rule in interposing the
requirement of court approval is to protect the nonmovant from

unfair treatment."). "[D]ismissal without prejudice is the norm, unless the court finds that the defendant will suffer legal prejudice." Colon Cabrera v. Esso Standard Oil Co. (Puerto Rico), 723 F.3d 82, 87 (1st Cir. 2013) (citation and internal punctuation omitted). "The mere prospect of a subsequent lawsuit does not constitute [legal] prejudice." Id.

"The district court is responsible . . . for exercising its discretion to ensure that such prejudice will not occur." Doe, 216 F.3d at 160. In deciding whether to grant a plaintiff's Rule 41(a)(2) motion, courts typically consider the "defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." Id. Courts need not analyze each of these factors, however, "or limit their consideration to these factors." Id.

## A. **Defendants' Efforts and Summary Judgment Motion**

The plaintiffs' motion to dismiss comes early in the litigation, which counts in their favor. 9 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2364 (3d ed.) ("Quite naturally, if the motion is made at an early stage of the case, before much has happened and only limited human and financial

resources have been invested in the matter by the defense, a
Rule 41(a)(2) dismissal is more likely to be granted by the
district court."). Plaintiffs brought their motion about two
months after filing their complaint. Cf. MBRO Capital, LLC v.
Stolzar, No. 3:09-cv-1688(CSH), 2011 WL 65913, *3 (D. Conn.
2011) (granting motion where "only eight months had elapsed
since the filing of the complaint" and "[t]he case had not
progressed far"). The pre-trial conference has not yet been
scheduled, the parties have not submitted a discovery plan, and
it appears that no meaningful discovery has occurred. See Doc.
No. 17 at 1.

    The defendants have, however, submitted a motion for
summary judgment, a fact that "may incline [courts] to deny
[plaintiffs'] voluntary dismissal motion." Wright et al.,
supra, § 2364; see, e.g., Phillips USA, Inc. v. Afflex USA,
Inc., 77 F.3d 354, 357-58 (10th Cir. 1996) (affirming denial of
plaintiff's voluntary dismissal motion, relying largely on fact
that summary judgment motion was pending). Yet, a summary
judgment motion "is only a single factor within the Court's
analysis and does not, in and of itself, preclude dismissal."
Glascock v. Prime Care Seven, L.L.C., No. SA-08-CA-334-FB, 2008
WL 2600149, *2 (W.D. Tex. 2008); see Pontenberg v. Boston
Scientific Corp., 252 F.3d 1253, PIN (11th Cir. 2001) (rejecting

per se rule that a pending motion for summary judgment motion
bars courts from granting Rule 41(a)(2) motion without
prejudice); Doe, 216 F.3d at 160 (describing pendency of summary
judgment motion as one of several factors that courts may
consider).  Moreover, the timing of defendants' motion here
makes this case unusual -- defendants filed their motion only
two months after plaintiffs brought their complaint, two days
after defendants filed their answer, after learning that
plaintiffs planned to dismiss the case, and before the pretrial
conference or any meaningful discovery.  As such, I do not lend
this factor much significance.

In sum, this is not a case in which the plaintiffs propose
"to dismiss the case at a late stage of pretrial proceedings, or
seek[] to avoid an imminent adverse ruling." Colon Cabrera, 723
F.3d at 88 (1st Cir. 2013).  Although defendants claim that they
have already invested "significant time and effort" in the
litigation, Doc. No. 18 at 2, 4, those efforts do not appear
extraordinary, and are largely a product of the defendants' own
aggressive litigation strategy.  These factors therefore weigh
in favor of granting plaintiffs' motion.

B.    **Plaintiffs' Diligence or Delay**

There is no evidence that the plaintiffs dawdled in
pursuing their case.  Plaintiffs filed their complaint here ten

days after the arbitrator entered her Interim Order, which forms
the basis of plaintiffs' claims.  See Doc. No. 13 at 1.  Less
than two months later, on May 23, the arbitrator issued an order
reaffirming her belief that she had the authority to determine
whether the dispute was arbitrable, and closed the arbitration.
Id. at 3.  That same day, plaintiffs' counsel contacted counsel
for the defendants, and explained their intention to dismiss the
suit.  Id.  Plaintiffs then filed their motion to dismiss about
a week later, on June 2.  Id.

These facts demonstrate that the plaintiffs did not
excessively delay or lack diligence in prosecuting this action.
This factor therefore counts in plaintiffs' favor.

## C.   <u>Explanation for Dismissal</u>

Finally, plaintiffs have supplied a plausible explanation
for moving to dismiss at this time.  Plaintiffs claim that they
have moved to dismiss because the arbitrator's orders render
many of plaintiffs' claims moot.  Doc. No. 21 at 4.  Under these
circumstances, plaintiffs argue, the appropriate way to
challenge the arbitrator's decision -- if plaintiffs choose to
do so at all -- is to petition to vacate the arbitrator's award.
Id. at 4 n.2.  According to the plaintiffs, this approach will
promote efficiency and avoid piecemeal litigation, without
prejudicing the defendants.  Id. at 8; cf. Canadian Nat. Ry. Co.

v. Montreal, Maine & Atl. Ry., Inc., 275 F.R.D. 38, 42 (D. Me. 2011) ("From the Court's perspective, its resources are better directed to controversies that all parties, particularly the plaintiff, wish to litigate, rather than to controversies that the parties, who initially sought relief, wish to dismiss.").

Defendants dispute this explanation, accuse the plaintiffs of improper "gamesmanship," Doc. No. 18 at 6, and argue that plaintiffs are moving to dismiss for "entirely strategic" reasons, id. at 4-5.[2]  Not to be outdone, plaintiffs complain that the defendants are guilty of "procedural maneuvering," Doc. No. 21 at 1, and have their own unsavory "ulterior motives," id. at 6.  See id. at 7 ("[T]here is reason to believe that

---

[2] Plaintiffs here have filed a petition in the District of Massachusetts to confirm an arbitration award in their favor against another former The Meat House franchisee.  See Doc. No. 11-15.  In that matter, the arbitrator determined that PCPA and Prime Choice Brands had validly acquired the rights under the franchise agreement, and therefore had standing to enforce the franchise agreement's arbitration clause against the franchisee. Id. at 13-14.  In response, the franchisees in the Massachusetts action have apparently raised the same argument that PCPA and Prime Choice Brands are pressing here -- that arbitrability is a question for the court, not the arbitrator.  See Doc. No. 18 at 5.  As the defendants here see it, PCPA and Prime Choice Brands seek to dismiss their complaint in this case in order to avoid the awkward position of arguing "in this action that the Arbitrator exceeded her authority to resolve the question of Plaintiffs' standing while at the same time seek[ing] to confirm an award in the Massachusetts action by arguing that the arbitrator acted within his authority to decide the question of Plaintiffs' standing."  Id.

Defendants are being influenced by third parties also engaged in arbitrations with Plaintiffs concerning similar issues and claims."). Neither side's argument on this point is compelling.

The defendants' additional arguments do not fare any better. Defendants suggest that it would be unfair to allow the plaintiffs to refile their suit "at some later date chosen by Plaintiffs when it suits their needs." Doc. No. 18 at 6. The First Circuit has explained, however, that "[n]either the prospect of a second suit nor a technical advantage to the plaintiff should bar the dismissal." Leith, 668 F.2d at 50. Defendants also assert that they want a "final and full resolution of the arbitration proceeding, which has endured more than a year," and claim that their summary judgment motion here might provide that resolution. Doc. No. 18 at 3. Although this desire for finality is commendable, it appears that defendants can achieve this same result in the arbitration proceedings.

Accordingly, in light of the factors identified by the First Circuit in Doe, 216 F.3d at 160, and given the totality of the circumstances of this case, it is appropriate to grant plaintiffs' motion to dismiss without prejudice here.

### III.  <u>CONCLUSION</u>

For the foregoing reason, plaintiffs' motion to dismiss

without prejudice (Doc. No. 13) is granted.   Defendants' motions

for summary judgment (Doc. No. 11) and motion for leave to amend

their answer (Doc. No. 19) are denied as moot.

SO ORDERED.


/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

July 18, 2016

cc:   James Goniea, Esq.
      Steven Reingold, Eq.
      Jonathan Shirley, Esq.
      Matthew Johnson, Esq.

13